1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JEFF MILLER, et al.,

                    Plaintiffs,

          v.

SPRINT SPECTRUM L.P., et al.,

                    Defendants.

CASE NO. C07-59JLR

ORDER DISMISSING
COMPLAINT

        This matter comes before the court on the parties' stipulation (Dkt. # 26) regarding Defendants' motion to dismiss (Dkt. # 10).  On July 31, 2007, the court denied Defendants' motion to dismiss finding that Plaintiffs had alleged sufficient facts in support of their claims against Defendants (Dkt. # 24).  Shortly after the court denied the motion, however, the parties filed a stipulation stating that Plaintiffs could not – indeed, would not – prove facts necessary to support an essential element of their claim.  The stated purpose of the stipulation was to force the court to determine the threshold issue of whether RCW § 35.21.873's notice requirement is constitutional.  The court has considered the papers filed in support of and opposition to the motion, including the supplemental papers filed by the parties, and heard the argument of counsel.  For the reasons stated below, the court GRANTS Defendants' motion to dismiss (Dkt. # 10).  Plaintiffs' complaint is dismissed without prejudice.

ORDER – 1

# I. BACKGROUND[1]

In February 2007, Plaintiffs filed this putative class action against wireless telephone service providers Sprint Spectrum L.P., doing business as Sprint PCS, and Washington Oregon Wireless, LLC (collectively, "Sprint"). Plaintiffs, who are mobile telephone service customers of Sprint, contend that Sprint levied city utility tax surcharges on Sprint customers that live outside city boundaries and are not lawfully subject to such tax. Plaintiffs aver that Sprint levied the city utility tax surcharge using the zip codes of customers' addresses, without first verifying each customer's location as being within the city boundaries. Plaintiffs assert various claims against Sprint including (1) negligence; (2) breach of contract; (3) violation of the Washington Consumer Protection Act ("CPA"), RCW § 19.86.020; and (4) unjust enrichment.

Sprint moved to dismiss Plaintiffs' complaint on the grounds that Plaintiffs failed to provide mandatory written notice to Sprint stating that they believed an erroneous tax had been applied to their bill prior to filing suit, as required by Washington law. *See* RCW § 35.21.873 (requiring 60-day notice and opportunity to cure before a customer can seek to collect erroneously charged taxes by a mobile telecommunications service provider) (also referred to as the "notice and cure provision"). Plaintiffs originally argued in their response to Sprint's motion that the putative class representatives provided notice to Sprint before initiating this lawsuit. They alleged that they "called defendant Sprint to question municipal utility tax surcharges on their bills. Sprint did not follow up on their queries, inform them the charges were incorrect, refund the charges, or remove the charges from subsequent bills. They were left with the impression that the charges were valid and proper. They were never informed, during the phone calls or otherwise, that

---

[1]The court provided a more detailed version of this dispute in the background section of its July 31, 2007 order denying Defendants' motion to dismiss.

ORDER – 2

they needed to provide any written notice to Sprint, nor that they must wait 60 days before initiating suit." Resp. at 1. The court denied Sprint's motion to dismiss on the basis that (1) it had not provided any authority that exhaustion must be plead in the complaint; rather than as an affirmative defense, and (2) there was a question as to whether the putative representative's phone calls to Sprint could qualify as a reasonable exercise of the procedures set for in RCW § 35.21.873, which states that the customer must "reasonably exercise[] the rights and procedures set forth in this section."

As stated briefly above, after the court issued its order denying the motion to dismiss, the parties filed the following stipulation:

> The parties stipulate and agree that it may be deemed established and taken as true for all purposes in this matter that Plaintiffs have not at any time provided written notice to Defendants (1) stating the Plaintiffs believed that the amount of city tax or an assignment of place of primary use or taxing jurisdiction included on any billings to Plaintiffs by Defendants for mobile telecommunications services was erroneous, and (2) including the street address for Plaintiffs' place of primary use, the account name and number for which Plaintiffs seek a correction, and a description of the error asserted by Plaintiffs. Plaintiffs' claim that they orally notified defendants by telephone that Plaintiffs believed that the amount of city tax and/or the assignment of taxing jurisdiction included on billings to Plaintiffs *was erroneous*.

Stipulation ¶ 3 (Dkt. #26) (emphasis added). The court thereafter agreed to reconsider its prior order based on the parties' stipulation. This order therefore supplements the court's July 31, 2007 order.

## II.  ANALYSIS

Sprint brings this motion pursuant to Federal Rule of Civil Procedure 12(b)(6). The court's analysis is therefore governed by *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (citations omitted) (stating that while a complaint need not contain detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do). The complaint must plead "enough facts

ORDER – 3

to state a claim to relief that is plausible on its face." *Id.* at 1974.  The court typically

construes the complaint in the light most favorable to the non-moving party when

considering a motion to dismiss under Rule 12(b)(6).  *See Livid Holdings Ltd. v. Salomon*

*Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).  Dismissal under Rule 12(b)(6)

can also be based on the lack of a cognizable legal theory or the absence of sufficient

facts alleged under a cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901

F.2d 696, 699 (9th Cir. 1990).  Here, the parties have stipulated to a more in-depth review

of Plaintiffs' complaint.  Although the court would not otherwise look beyond the

pleadings in a Rule 12(b)(6) motion, given that both parties agree that the court should

determine the underlying constitutional issue, the court considers both the stipulation and

the factual contentions therein in its analysis.

**A.    Statutory History of RCW § 35.21.873**

This motion involves the application of the Washington statute adopting the

federal Mobile Telecommunications Sourcing Act ("MTSA").  Congress enacted the

MTSA, effective August 2002, as a way to simplify the taxation of wireless

telecommunications services by creating uniform methods of sourcing[2] all wireless calls

to a single geographical jurisdiction for taxing purposes.  *See* 4 U.S.C. §§ 116-126.  In

Washington, mobile service providers pay state Business and Occupation tax on receipts

from sales of telephone services, and collect sales taxes from buyers of telephone

services.  House Bill Report, 2002 Reg. Sess. S.B. 6539 (March 7, 2002).  Most cities

also impose utility taxes on telephone services.  *Id.*  It is in the collection of this form of

sales tax that poses a problem for service providers.  Due to the mobility of wireless

telephone equipment, service providers have a difficult time determining which state and

---

[2]The term "sourcing" refers to the process of determining where a transaction is taxable.

ORDER – 4

local tax to apply to a wireless call.  Hence, the federal government's enactment of the MTSA.

The MTSA provides rules for state and local governments to follow in determining how to tax mobile telecommunications services in their jurisdiction.  Under the MTSA, wireless telecommunications services are sourced to the customer's "place of primary use."  4 U.S.C. § 122.  This is the customer's residential or primary business address, which must be located in the service provider's licensed service area.  *Id.*  The taxing jurisdiction in which the place of primary jurisdiction is located is the only jurisdiction that may tax the mobile calls regardless of the customer's location when the call originates, terminates, or is in progress.  *Id.*

Under the MTSA, in determining the taxing jurisdiction for a customer's place of primary use, states can supply wireless providers with an electronic database that matches each street address with its appropriate taxing jurisdiction.  4 U.S.C. §§ 119 and 120.  If a state does not supply the provider with a database, the wireless provider can use the customer's nine-digit zip code to assign addresses to the appropriate taxing jurisdiction.  *Id.*  The Washington Legislature thereafter passed two statutes addressing both options.  Section 82.32.490 covers situations where either the state or "a designated data base provider" establishes an electronic database for service providers to use in levying taxes against its customers.  RCW § 82.32.490.  This section also sets forth a hold harmless provision if the erroneous tax resulted from the electronic database provided by the Washington Department of Revenue ("DOR") or a designated data base provider.  *Id.*  Section 82.32.495, on the other hand, provides protection for erroneous tax collection by service providers who use the nine-digit zip code method, if the service provider exercises due diligence to ensure that each street address is assigned to the correct taxing jurisdiction.  RCW § 82.32.495.  It appears from the record that Washington DOR has yet

ORDER – 5

to provide a database, and service providers in this state are using the nine-digit zip code method.  There appears to be little doubt that the use of the nine-digit zip code is an imperfect method for sourcing calls, and requires an additional level of verification by the service provider.  The method is imperfect because not all zip codes fits squarely into the different taxing jurisdictions.

In addition to the hold harmless provisions in RCW § 82.32.490 and § 82.32.495 discussed above, the Washington Legislature also adopted a 60-day notice and opportunity to cure requirement before a customer can bring suit against a service provider for recovery of erroneously collected taxes.  *See* RCW § 35.21.873.  RCW § 35.21.873 provides, in part:

> If a customer believes that an amount of city tax or an assignment of place of primary use or taxing jurisdiction included on a billing for mobile telecommunications services is erroneous, the customer shall notify the home service provider in writing . . . .  Within sixty days of receiving a notice under this section, the home service provider shall review its records . . . to determine the customer's taxing jurisdiction. The home service provider shall notify the customer in writing of the results of its review.
>
> The procedures in this section shall be the first remedy available to customers seeking correction of assignment of place of primary use or taxing jurisdiction, or a refund of or other compensation for taxes, charges, and fees erroneously collected by the home service provider, and no cause of action based upon a dispute arising from such taxes, charges, or fees shall accrue to the extent otherwise permitted by law until a customer has reasonably exercised the rights and procedures set forth in this section.

RCW § 35.21.873.  The Washington statute became effective in August 2002.  No court has construed or applied the statute since its enactment.  Additionally, the notice and cure procedure is not mentioned as an option in the MTSA; it is exclusively a Washington State-created procedure, although other states have enacted similar notice provisions.[3]

---

[3]*See, e.g.,* Alaska Stat. § 29.45.750(c); Ariz. Rev. Stat. § 42-5034.01; Ark. Code Ann. § 26-52-315(c)(2)(A); Colo. Rev. Stat. § 29-1-1002(3); 30 Del. Code. Ann. § 5508(b); D.C. Code § 47-3922(e); Ga. Code Ann. § 48-8-13(c); Ky. Rev. Stat. § 65-7640; Mont. Code Ann. § 15-53-

ORDER – 6

**B.      Constitutional Challenge to RCW § 35.21.873**

Plaintiffs challenge the constitutionality of RCW § 35.21.873 on the grounds that the statute:  (1) violates the constitutional ban on special laws by granting cell phone companies unequal privileges and immunities; (2) creates an unconstitutional barrier to open access to the courts; (3) creates an illegal impediment to access to the courts; and (4) violates separation of powers by legislatively establishing procedural rules for lawsuits when only the Supreme Court has the constitutional power to create such rules.

After briefing was complete in this case, the Washington Supreme Court decided *Scott v. Cingular Wireless*, 2007 Wash. LEXIS 479 (Wash. July 12, 2007), wherein it held Cingular's class action waiver unconscionable because it effectively denies large numbers of consumers protection under the CPA.  *Id.* at *4-5.  Plaintiffs submitted this case as "supplemental authority," for its arguments on equal protection, due process, and separation of powers.  Plaintiffs did not provide any argument suggesting this case supports their position.  The court finds the *Scott* decision relevant to Plaintiffs' argument regarding open access to the courts and addresses their supplemental authority in this section.  Otherwise, the court takes each of Plaintiffs' constitutional challenges in turn. The court begins each analysis with the presumption that the statute is constitutional.  *See Heller v. Doe*, 509 U.S. 312, 319 (1993).

**(1)  Privileges and Immunities**

According to Plaintiffs, the notice and cure provision violates the Washington constitutional limitation on special legislation and guarantee of equal access to the courts, as well as the federal equal protection clause.  Plaintiffs rely on Washington Const. Art. 1 § 12, stating that "no law shall be passed granting to any . . . corporation, privileges or

---

131(4); N.H. Rev. Stat. Ann. § 82-A:4-b(V); 68 Okla. Stat. § 55001(D)(7); Tenn. Code Ann. § 67-6-532(c)(1); Wyo. Stat. Ann. § 39-15-109(g).

immunities which upon the same terms shall not equally belong to all . . . corporations."
Plaintiffs also cite to the Fourteenth Amendment of the United States Constitution: no
state may "deny to any person within its jurisdiction the equal protection of the law."  As
explained by the Washington Supreme Court in *Anderson v. King County*, 138 P.3d 963
(Wash. 2006), while the aim and purpose of the special privileges and immunities
provision of Art. I, § 12, of the Washington State Constitution and of the equal protection
clause of the fourteenth amendment of the Federal Constitution is to secure equality of
treatment of all persons, without undue favor on the one hand or hostile discrimination on
the other, there are differences between the two protections.  *Id.* at 972-73.  "The concern
underlying the state privileges and immunities clause, unlike that of the equal protection
clause, is undue favoritism, not discrimination, and the concern about favoritism arises
where a privilege or immunity is granted to a minority class ('a few').  Therefore, an
independent state analysis is not appropriate unless the challenged law is a grant of
positive favoritism to a minority class.  In other cases, we will apply the same analysis
that applies under the federal equal protection clause."  *Id.*  Here, the challenge is based
on a law that grants favoritism to a minority class of public utility providers, i.e., mobile
telecommunications providers, and thus, Washington's privileges and immunities clause
is applicable, and the court reviews the statute to determine whether it provides undue
favoritism to a minority group.

There being no protected class and no fundamental right burdened by the notice
and cure provision, the court applies a rational basis review of the statute.[4]  *See DeYoung
v. Providence Med. Ctr.*, 960 P.2d 919 (1998).  Under rational basis review, or minimum

---

[4]Although Plaintiffs never cite the level of scrutiny in their opposition to Sprint's motion,
they argue in terms of whether there was a "rational reason" for the distinction between cell
phone companies and all other public utility companies.  Thus, the court infers that Plaintiffs agree
that the rational basis test is applicable to their constitutional challenge.

ORDER – 8

scrutiny, Plaintiffs have the burden of proving that the classification drawn by the law is not rationally related to a legitimate state interest. *Id.* A legislative enactment survives a constitutional challenge under minimum scrutiny analysis if (1) the legislation applies alike to all members within the designated class; (2) there are reasonable grounds to distinguish between those within and those without the class; and (3) the classification has a rational relationship to the proper purpose of the legislation. *Id.* (quotations and citations omitted). "The rational relationship test is the most relaxed and tolerant form of judicial scrutiny under the equal protection clause." *State v. Heiskell*, 916 P.2d 366, 372 (1996) (quotations omitted).

Plaintiffs contend that the notice and cure provision contained in RCW § 35.21.873 grants mobile telecommunications providers greater protections from lawsuits, including class actions, that is not afforded to similarly-situated public utilities providers, such as landline-based phone companies and cable companies. This heightened protection for mobile telecommunications providers, according to Plaintiffs, is unconstitutional. The court does not agree. There is legislative history at both the state and federal level discussing the difficulties of assigning a taxing jurisdiction to a *mobile* telephone call as well as supporting legislation to assist state and local governments in addressing this problem. *See, e.g.,* Wash. H.R. B. Rep., 2002 Reg. Sess. S.B. 6539 (March 7, 2002) (noting that due to the mobility of wireless telephone equipment, "determining which state and local taxes apply to a wireless call is complicated"). In Washington, as in most states, the state and local governments delegate the collection of taxes from customers who purchase mobile telecommunications services to the providers of these services, such as Sprint. Accordingly, it appears that the Washington Legislature extended additional protection to mobile telecommunications providers who may

ORDER – 9

erroneously collect taxes from its customers, using the imperfect method for assigning

taxing jurisdiction approved by the MTSA and the Washington Legislature.

One obvious result of this imperfect method for collecting sales taxes is the possibility of litigation by consumers who were erroneously charged a tax although they did not reside in the taxing jurisdiction.  Indeed, one commentator noted that "[a]n emerging issue regarding telecommunications providers' obligation to collect sales tax is the industry's vulnerability to consumer class-action lawsuits over erroneous tax collections."  BNA Tax Management Portfolios (BNA State Series, Special Industries No. 1810 § 04).  To address the potential liability for service providers and to "simplify the process for tax customers" seeking a refund of taxes, the legislature added a requirement that if the customer believes that the amount of tax on a mobile telecommunications bill is erroneous, the customer must notify the service provider in writing of the dispute.  Wash. S.B. Rep. 2002 Reg. Sess. S.B. 6539 (February 16, 2002).  The service provider then has 60 days to correct the erroneous tax or provide a written explanation of why the service provider believes the tax is correct.  *Id.*

Applying this backdrop to a rational basis test, the court agrees with Plaintiffs that the legislation affords greater protection to mobile telecommunications providers.  The court finds that there are reasonable grounds to distinguish between mobile telecommunications providers and other public utility providers, given the inherent mobility in mobile telecommunications services and the recognized difficulty in sourcing these taxable transactions.  This protection has a rational relationship to the purpose of the legislation at issue.  Because the mobile telecommunications provider is confronted with the onerous task of sourcing mobile calls, the Washington Legislature gave these providers the added protection of a notice and opportunity to cure requirement prior to being subjected to litigation for erroneous tax collection.  The court finds the relationship

ORDER – 10

between the Legislatures attempted "fix" to the problem of erroneous tax collection by requiring notice and cure to be rationally related to the problems associated with sourcing mobile telephone calls.

At oral argument, Plaintiffs offered a new argument regarding whether the notice and cure provision was actually necessary to protect mobile telecommunications providers. Plaintiffs argued that once the MTSA set the taxing location for all mobile telephone calls, i.e., the primary place of use, then mobile telecommunications providers were put in the same position as any other public utility provider. That is, just like land-line telecommunications providers or cable providers, after the MTSA, the sole taxing location for mobile calls is the residence or business address of the customer. Thus, according to Plaintiffs, there is no difference between mobile telecommunications providers and other public utility providers. While the court finds the argument persuasive, it notes that Plaintiffs provide no evidence or legislative support for their position. Indeed, Plaintiffs leave the court to speculate as to whether land-line providers would be confronted with the same problems that mobile providers face, such as the mobility and ease by which mobile telecommunications customers switch carriers or move their place of primary use without informing their service provider. And, unlike land-line providers, the mobile telecommunications customer is not bound to one location. Nevertheless, because the court analyzes Plaintiffs' arguments keeping in mind that "a statute is presumed constitutional and the party challenging it has a heavy burden of proof," it does not find that Plaintiffs have carried their burden in this matter. *See Cosro, Inc. v. Liquor Control Bd.*, 733 P.2d 539, 542 (1987).

Given the federal mandate on sourcing mobile telecommunications calls and the inherent difficulty with taxing mobile telephone calls, the court does not find the 60-day notice provision to be an unconstitutional privilege granted to mobile telecommunications

ORDER – 11

providers.  The Washington Legislature's distinction between mobile telecommunications providers and other utility providers is reasonably related to the government interest in establishing some uniformity in the taxation of mobile calls.

### (2)  Open Access to the Courts

Section 10 of Article 1 of the Washington Constitution provides, "Justice in all cases shall be administered openly, and without unnecessary delay."  According to Plaintiffs, RCW § 35.21.873 is designed to make it difficult for mobile telecommunications customers to bring class actions.  Plaintiffs' argument rests on the notion that the notice and opportunity to cure provision will allow Sprint to resolve one customer's complaints while the improper billing of other customers goes unaddressed. According to Plaintiffs, this essential bar to a class action is especially egregious in cases such as this one because the individual claims are so minimal.

After briefing was complete in this matter, Plaintiffs submitted notice of supplemental authority referring the court to *Scott v. Cingular Wireless*, 2007 Wash. LEXIS 479 (Wash. July 12, 2007) – without offering an explanation as to how this case affects their position.  In *Scott*, the Washington Supreme Court explained that "when consumer claims are small but numerous, a class-based remedy is the only effective method to vindicate the public's rights."  2007 Wash. LEXIS 479 at *3 (citations omitted).  Moreover, "[c]lass actions are vital where the damage to any individual consumer is nominal, and that vital piece is exactly what the plaintiffs claim the class action waiver before us seeks to eviscerate."  *Id.*  Thus, the court concluded that "without class actions, consumers would have far less ability to vindicate the CPA."  *Id.* (citations omitted).  While the court is mindful of the public policy considerations in providing class-based remedies, especially in the context of the Washington Consumer Protection Act, there is insufficient evidence or argument to suggest that RCW § 35.21.873 runs

ORDER – 12

afoul of *Scott v. Cingular Wireless* or Section 10 of Article 1 for that matter.  Nor is there sufficient evidence for the court to conclude that class actions are in fact barred by the notice and cure provision of RCW § 35.21.873.  Indeed, as the court explored during oral argument, RCW § 35.21.873 requires only that the customer "reasonably exercise" the notice and cure procedures.  Plaintiffs do not adequately address the issue of reasonable compliance, nor do they address the issue of whether RCW § 35.21.873 creates a jurisdictional bar to litigation.  In fact, it is clear from the parties' stipulation that Plaintiffs made no attempts to comply with the notice and cure provision, and unless RCW § 35.21.873 is declared unconstitutional, they have no claim.  Finally, the court concludes that even if the notice and cure provision violates the public policy expressed in the *Scott* decision, the court is not aware of any authority to suggest that the legislature does not have the power to legislate outside this public policy consideration.  In sum, the court does not find that this provision violates the "open access to courts" provision of the Washington Constitution.

### (3)  Creating an Illegal Impediment to Access to the Courts

Plaintiffs argue that RCW § 35.21.873 forces mobile telephone users in Washington State to choose between their fundamental right of access to courts, including the right to trial by jury, and receiving cellular service.  Plaintiffs provide no authority for this argument and, instead, allude to Washington State's rules on representation for indigent citizens as somehow supporting this theory.  The court finds this argument unpersuasive.  Aside from the lack of legal support for their theory, the court concludes that section 35.21.873 does not prevent a plaintiff from seeking redress in court it only requires that they first notify their service provider and give them 60 days to cure the problem before seeking judicial remedies.  Accordingly, the court does not find that the

ORDER – 13

notice and cure provision in section 35.21.873 creates an illegal impediment to access to the courts.

### (4)  Separation of Powers

Finally, Plaintiffs contend that the Washington Constitution's provision that "[t]he judicial power of the state shall be vested in the Supreme Court, Superior Courts, justice of the peace, and such inferior courts as the legislature may direct," precludes the Washington Legislature from placing "undue obstacles upon the exercise by the courts of their traditional powers to protect an existing right."  Resp. at 13 (citing Wash. Const. Art. 4 § 1).  The question then is whether the Washington Legislature has the authority to prescribe the mechanism for bringing common-law claims against mobile telecommunications providers, or whether this places an undue obstacle upon the exercise of the court's traditional powers.  After considering the parties' supplemental briefing on this issue, the court finds that the notice and cure provision of RCW § 35.21.873 does not improperly interfere with the powers of the judiciary.

The court rests its conclusion on the distinction between the legislature's interference with the power of the judiciary to employ remedies and the legislature's power to abolish or limit common law causes of action.  "The legislature may properly impose requirements governing matters of procedure and the presentation of legal claims. Within the constitutional limitations on its right to control the jurisdiction of the courts, the legislature as a general rule, has the power to formulate, prescribe, enlarge, modify, alter and abolish remedies, and prescribe the terms and conditions on which actions may be brought."  16 Corpus Juris Secundum, Constitutional Law, § 231 (June 2007).  The Washington Court of Appeals, in *Suburban Fuel Co. v. Lamoreaux*, 480 P.2d 216 (Wash. Ct. App. 1971), explained the limits of legislative power vis-a-vis the judiciary in

ORDER – 14

determining the constitutionality of a statute barring unregistered contractors from

recovering on an unjust enrichment claim.  The court stated:

> There is little doubt that the legislature, in the exercise of legislative power vested in that body by article 2, section 1 of the Washington State Constitution, may change state substantive law in the exercise of the state's police power, in the absence of other constitutional prohibitions, state or federal, specific or general.  Accordingly, the legislature by statute has provided that certain types of contracts or transactions shall be deemed void or voidable, illegal, or both.  Many illustrations of the exercise of this power may be found in the fields of consumer protection, minors, incompetent persons, married persons, statutes of fraud, fraudulent conveyances, securities acts, contracts involving employee discrimination, sales below cost, various types of commercial transactions and others.  Indeed the legislature may even abolish a cause of action in the proper exercise of the state's police power.  Our Industrial Insurance Act is illustrative.  RCW 51.04.010, *et seq.*; *State v. Mountain Timber Co.*, 75 Wash. 581, 135 P. 645 (1913), *aff'd*, 243 U.S. 219, 37 S.Ct. 260, 61 L.Ed. 685 (1917); *State ex rel. Davis-Smith Co. v. Clausen*, 65 Wash. 156, 117 P. 1101 (1911).

*Id.* at 218.  While *Suburban Fuel* teaches that the Washington Legislature may change the

substantive law in exercising its police power and may even abolish a cause of action,

*Blanchard v. Golden Age Brewing*, sets the boundaries of legislative power.  63 P.2d 397

(Wash. 1936).  In *Blanchard*, the Washington Supreme Court held unconstitutional the

legislature's attempt to repeal the power of the court to issue injunctions in certain

situations.  *Id.* at 404.  The court held that the statute prohibiting injunctions violated the

doctrine of separation of powers because it impaired the judicial function, i.e., its

discretion in imposing remedies.  *Id.*  The *Blanchard* court, quoting *Shea v. Olson*, 53

P.2d 615, 621 (Wash. 1936), explained:

> The final ground of the contention is that the act violates article 4, §§ 1 and 6 of the State Constitution, relating to the judicial powers of the state. The act does not assume to interfere with any power of the court.  What it does is to abolish certain causes of action.  The power of a court is not invoked until a cause comes before it, and terminates when the action ceases.  The judicial power is not affected merely because litigation decreases or a certain type of litigation is abolished.

ORDER – 15

*Id.* at 407.  Thus, the question is whether RCW § 35.21.873 impairs the court's ability to fashion a remedy or whether it changes a substantive law affecting access to the court. Plaintiffs argue that the notice and cure provision impairs the court's ability to provide a class-wide remedy and therefore is more akin to *Blanchard* than it is to *Suburban Fuel*. As stated above, however, the court is not convinced that RCW § 35.21.873 actually precludes class actions.  Nevertheless, the court finds that the notice and cure provision is more akin to the latter description of legislative power and is therefore in line with *Suburban Fuel*.  Here, the power of the court is not invoked until the cause of action comes before it; the Washington Legislature by enacting section 35.21.873 created an impediment to the right to bring the cause of action before the court but did not limit the court's power once the action is properly before it.  *See* RCW § 35.21.873 ("[N]o cause of action based upon a dispute arising from such taxes, charges, or fees shall accrue to the extent otherwise permitted by law until a customer has reasonably exercised the rights and procedures set forth in this section.").  Accordingly, the notice and cure provision does not violate the doctrine of separation of powers.

## III.  CONCLUSION

The court, having found RCW § 35.21.873 constitutional, dismisses Plaintiffs' complaint for failing to first provide notice and an opportunity to cure to Sprint prior to filing this lawsuit.  The court GRANTS Defendants' motion to dismiss (Dkt. # 10) and dismisses Plaintiffs' complaint without prejudice.

Dated this 6th day of December, 2007.

JAMES L. ROBART
United States District Judge

ORDER – 16